**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ABIGAIL STRUBEL,<br>individually and on behalf of all<br>others similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>CAPITAL ONE BANK (USA), N.A.,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 1:14-cv-05998-AJN |

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>CAPITAL ONE BANK (USA), N.A.'S MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... ii

I.      INTRODUCTION ........................................................................................................ 1

II.     FACTUAL BACKGROUND ....................................................................................... 2

III.    PLAINTIFF'S COMPLAINT AND PROCEDURAL HISTORY ................................. 3

IV.     STANDARD OF REVIEW .......................................................................................... 4

V.      ARGUMENT ............................................................................................................... 4

      A.      The Disclosures Comply with TILA ................................................................ 4

            1.      Statutory and Regulatory Framework ......................................................... 4

            2.      Capital One's Disclosures Are Clear and Conspicuous as a Matter of Law ............................................................................................ 7

            3.      Plaintiff Seeks To Impose Complex and Nonexistent Font Style and Size Requirements ............................................................. 11

            4.      Capital One's Disclosures Are Substantially Similar to the Model Form ............................................................................................... 13

      B.      At Best, Plaintiff Asserts Only Hypertechnical Violations ................................. 14

      C.      Capital One's Expert Report Establishes That its Disclosures Are as Readable as Plaintiff's Suggested Requirements .............................................. 16

      D.      A Stay is Warranted Until the Supreme Court Decides Whether Plaintiffs Who Assert Only Statutory Damages Possess Article III Standing .................... 19

VI.     CONCLUSION ........................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*720 Lex Acquisition, LLC v. Guess? Retail Inc.*,
No. 09-cv-7199, 2014 WL 4184691 (S.D.N.Y. Aug. 22, 2014)................................................8

*Altamirano v. Copiague Funding Corp.*,
No. 3:06cv1751, 2008 WL 3845362 (D. Conn. Aug. 18, 2008) ...........................................10

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..................................................................................................................4

*Aubin v. Residential Funding Co., LLC*,
565 F. Supp. 2d 392 (D. Conn. 2008).......................................................................................9

*Barrett v. Bank One, N.A.*,
511 F. Supp. 2d 836 (E.D. Ky. 2007) .......................................................................................8

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..................................................................................................................4

*Chase Bank USA, N.A. v. McCoy*,
562 U.S. 195 (2011)..................................................................................................................5

*Cole v. U.S. Capital*,
389 F. 3d 719 (7th Cir. 2004) .................................................................................................10

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006)................................................................................................................21

*David v. Alphin*,
704 F.3d 327 (4th Cir. 2013 2013) .........................................................................................20

*Doe v. Nat'l Bd. Of Med. Exam'rs*,
199 F.3d 146 (3d Cir. 1999)....................................................................................................20

*Ford Motor Credit Co. v. Milhollin*,
444 U.S. 555 (1980)..................................................................................................................9

*Gambardella v. G. Fox & Co.*,
716 F.2d 104 (2d Cir. 1983)........................................................................................7, 15, 16

*Handy v. Anchor Mortg. Corp.*,
464 F.3d 760 (7th Cir. 2006) ....................................................................................................8

*In re Bassett*,
   285 F.3d 882 (9th Cir. 2002), *cert. denied,* 537 U.S. 1002 (2002)..........................9

*In re DiVittorio*,
   670 F.3d 273 (1st Cir. 2012) ............................................................................15

*Karakus v. Wells Fargo Bank, N.A.*,
   941 F. Supp. 2d 318 (E.D.N.Y. 2013) ..........................................................7, 9

*Kendall v. Employees Retirement Plan of Avon Prods.*,
   561 F.3d 112 (2d Cir. 2009)...............................................................................20

*Lahoud v. Countrywide Bank FSB*,
   No. 3:07cv01616 DJS, 2012 WL 1067391 (D. Conn. Mar. 30, 2012) ....................8

*Murray v. Sunrise Chevrolet, Inc.*,
   No. 04 C 7668, 2005 WL 2284245 (N.D. Ill. Sept. 15, 2005)........................10, 11

*Palmer v. Champion Mortg.*,
   465 F.3d 24 (1st Cir. 2006)..................................................................................9

*Raines v. Byrd*,
   521 U.S. 811 (1997)...........................................................................................20

*Rubio v. Capital One Bank*,
   613 F.3d 1195 (9th Cir. 2010) .......................................................................4, 8

*Schwartz v. Comenity Capital Bank*,
   No. 13 Civ. 4896, 2015 WL 410321 (S.D.N.Y. Feb. 2, 2015) .....................8, 13, 14

*Schwartz v. HSBC Bank USA, N.A.*,
   No. 13 Civ. 769, 2013 WL 5677059 (S.D.N.Y. Oct. 18, 2013) ...........................15

*Scotto v. Almenas*,
   143 F.3d 105 (2d Cir. 1998)..................................................................................4

*Smith v. Chapman*,
   614 F.2d 968 (5th Cir. 1980) ............................................................................15

*Smith v. Check–N–Go of Illinois*,
   200 F.3d 511 (7th Cir. 1999) ...............................................................................8

*Spokeo v. Robins*,
   575 U.S. ___, 2015 WL 1879778 (Apr. 27, 2015) ....................................1, 19, 21

*Stein v. JPMorgan Chase Bank*,
   279 F. Supp. 2d 286 (S.D.N.Y. 2003).................................................................15

*Strubel v. Comenity Capital Bank,*
    No. 13-cv-4462, 2015 WL 321859 (S.D.N.Y. Jan. 23, 2015) ....................................8, 14, 15

*Strubel v. Talbots Classics et al.,*
    No. 1:13-cv-01106-PAE (S.D.N.Y.) ...................................................................................14

*Turner v. General Motors Acceptance Corp.,*
    180 F.3d 451 (2d Cir. 1999) ...............................................................................................15

*Veale v. Citibank,*
    85 F.3d 577 (11th Cir. 1996) .............................................................................................15

*Warth v. Seldin,*
    422 U.S. 490 (1975) ...........................................................................................................20

*Watkins v. SunTrust Mort., Inc.,*
    663 F.3d 232 (4th Cir. 2011) .............................................................................................15

**STATUTES**

Fed. R. Civ. P. 56(c) ..................................................................................................................4

15 U.S.C. § 1601 .......................................................................................................................1

15 U.S.C. § 1604(a) ...................................................................................................................4

15 U.S.C. § 1604(b) .................................................................................................................13

15 U.S.C. § 1632(a) ...................................................................................................................4

15 U.S.C. § 1632(c) ...................................................................................................................4

15 U.S.C. §1637(a)(7) .............................................................................................................13

15 U.S.C. § 1637(c) ...............................................................................................................2, 4

**OTHER AUTHORITIES**

Pet. for Cert., *Spokeo v. Robins,*
    No. 13-1339 (U.S. Apr. 27, 2015), 2014 WL 1802228 ......................................................19

12 C.F.R. Part 1026............................................................................1, 4, 5, 11, 12, 13, 14, 16

12 C.F.R. Part 1026 Supp. I........................................................................................................5

12 C.F.R. Part 1026 Supp. I, Appendix G, Comment 5..............................................................6

12 C.F.R. Part 1026 Supp. I, Comment 5(a)........................................................................5, 6, 7

12 C.F.R. Part 1026 Supp. I, Comment 5·vi ...................................................................7

12 C.F.R. § 1026.5(a)........................................................................................5, 13

12 C.F.R. § 1026.60(b)(1)...................................................................................5, 7

Local Rule of Civil Procedure 56.1 ............................................................................2

Defendant Capital One Bank (USA), N.A. ("Capital One") respectfully submits this Memorandum of Law in Support of its Motion for Summary Judgment.

## I.      INTRODUCTION

Plaintiff Abigail Strubel brings a putative class action alleging that Capital One violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, by providing credit card application disclosures that did not match all of the font size and font style formatting techniques set forth in 12 C.F.R. Part 1026 ("Regulation Z") and the official staff interpretations of Regulation Z.  Plaintiff's claims are based on a misunderstanding of the law's requirements, which grant flexibility to card issuers in deciding how to provide the required disclosures. Plaintiff also suggests an implausible font size and style combination requirement that has no basis in the law.

Capital One complied with the only formatting techniques required by Regulation Z. Moreover, Capital One's disclosures are plainly noticeable and readable to an average consumer, i.e., they are "clear and conspicuous," as required by TILA.  Scientific analysis confirms this straightforward and obvious conclusion.  Because the Court faces a question of pure law, and because Capital One undeniably complied with the requirements of TILA, the Court should grant Capital One's Motion for Summary Judgment.

Alternatively, the Court should stay the proceedings until the United States Supreme Court issues a decision in *Spokeo v. Robins*, 575 U.S. ___, 2015 WL 1879778 (Apr. 27, 2015) (granting cert.).  *Spokeo* presents the question of whether a plaintiff who asserts only a statutory violation has Article III standing.  Because Plaintiff concedes that she was not actually harmed by the alleged violation, the Supreme Court's ruling on this question will determine whether she has standing to bring her claim.

## II.  FACTUAL BACKGROUND

In August 2013, Plaintiff received in the mail an application for a Capital One VentureOne credit card.  (Capital One's Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 ("Rule 56.1 Statement") ¶ 5.)  Plaintiff completed the application and was approved for the card in August 2013.  (*Id.* ¶ 6.)  On September 3, 2013, she made her first purchase using the card.  (*Id.* ¶ 7.)  Capital One is a "creditor" and Plaintiff is a "consumer" under TILA.  (*Id.* ¶ 3-4.)

Capital One included with the application a single-page of required disclosures informing Plaintiff of the card's key terms and conditions (the "Disclosures").  (*Id.* ¶ 8.)  A true copy of the Disclosures is attached as Exhibit A to the Declaration of Seth A. Schaeffer ("Schaeffer Decl.") filed May 18, 2015.[1]  As is explained in further detail below, TILA § 1637(c) requires creditors to include various disclosures with any application to open a credit card account.  The information on Capital One's Disclosures appeared in 10- and 16-point font size, in a font style identified as ITC Garamond Light Condensed BT ("Garamond").  (Rule 56.1 Statement ¶ 10.)  Specifically, the written text of the Disclosures appeared in 10-point font and the numbers indicating the Annual Percentage Rate ("APR") appeared in 16-point bold font.  (*Id.* ¶ 11.)  Generally speaking, Garamond is a slightly smaller font than Arial.  (*Id.* ¶ 12.)  In other words, text written in 10-point Garamond typically takes up less space on the page than text written in 10-point Arial. (*Id.*)

---

[1] The page containing the Disclosures attached as an exhibit to the Complaint is a copy of the original Disclosure mailed to Plaintiff.  Capital One understands from Plaintiff's counsel that the original has since been misplaced.  Rather than use the poor copy attached to the Complaint—it is blurry and cut off in places—the parties have agreed to use Ex. A as the copy that the Court can consider.  It is a copy of the official sample that Capital One keeps in its files and the content is identical to the Disclosures received by Plaintiff except that the addressee is a fictional person. The original official sample can be made available to the Court upon request.  (Schaeffer Decl. ¶ 3.)

To fit the required disclosures, as well as Capital One's additional, voluntary disclosures, on a single page, Capital One utilized formatting techniques to reduce excess space between lines of text and characters.  (*Id.* ¶¶ 13-14.)  The technical terms for these techniques are "leading" and "tracking," respectively.  (*Id.* ¶ 13.)  The space reduction was performed in accordance with an algorithm developed by a Capital One vendor.  (*Id.* ¶ 14.)  The final version of the Disclosures was reached after a number of passes through the algorithm, each of which gradually decreased white space on the page and brought characters, words, and lines closer together.  (*Id.*)

The decisions to use Garamond font and to print all the Disclosures on a single page had no impact on the readability of the Disclosures.  (*Id.* ¶ 15.)  The result was text that is easily readable by a person with normal vision.  (*Id.*)  Capital One's expert conducted a study comparing text printed in Garamond with two other common font styles and found no measurable impact on reading speed and error rate.  (*Id.* ¶ 16.)  Capital One's expert also determined that the Disclosures met the minimum print size necessary to ensure fluent reading.  (*Id.* ¶ 17.)

## III.   PLAINTIFF'S COMPLAINT AND PROCEDURAL HISTORY

Plaintiff claims that Capital One violated TILA's disclosure requirements by using a font style other than Arial and by either not using 10- and 16-point font, or compressing the text so it appeared smaller than the required 10- and 16-point font size.  (Compl. ¶ 39.)  Plaintiff seeks to represent a class of similarly situated individuals.  She does not allege that she or any putative class member suffered actual harm as a result of Capital One's disclosures.  (*Id.* ¶ 40.)  Instead, she claims only a violation of her statutory rights and seeks statutory damages of up to $1,000,000 on behalf of the class.  (*Id.* ¶ 41.)

On November 24, 2015, the Court entered a case management plan under which the parties agreed to bifurcate discovery on the issues of (1) liability and (2) damages and class certification.  (ECF No. 15.)  The schedule contemplated the parties moving for an expedited resolution on the liability issue.  (*Id.*)  The parties have now completed discovery on liability, and the case is ripe for disposition on summary judgment.

## IV.    STANDARD OF REVIEW

Summary judgment is proper if the Court determines that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In opposing a motion for summary judgment, "[t]he non-moving party may not rely on conclusory allegations or unsubstantiated speculation."  *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).  Rather, the opposing party "must produce specific facts indicating that a genuine factual issue exists."  *Id*. at 114 (citation and quotations omitted).  "If the evidence [produced by the nonmoving party] is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted).

## V.    ARGUMENT

### A.    The Disclosures Comply with TILA

#### 1.    *Statutory and Regulatory Framework*

TILA requires creditors to disclose to consumers a variety of information in an application or solicitation for a credit card.  15 U.S.C. § 1637(c).  The information must be disclosed "clearly and conspicuously," 15 U.S.C. § 1632(a), and in a "tabular format" prescribed by 15 U.S.C. § 1632(c).  The tabular format is commonly referred to as the Schumer Box.  *See Rubio v. Capital One Bank*, 613 F.3d 1195, 1198 (9th Cir. 2010).

The statute grants rulemaking authority to the Consumer Financial Protection Bureau

(the "Bureau").  15 U.S.C. § 1604(a).  Pursuant to its authority, the Bureau promulgated

Regulation Z, which outlines the disclosures required to appear in and directly beneath the

Schumer Box.[2]  12 C.F.R. §§ 1026, 1026.60.  As with TILA, Regulation Z requires that all

mandated disclosures be made clearly and conspicuously.  12 C.F.R. § 1026.5(a).  Section

1026.60 also specifies that the Schumer Box disclosures be made in a format "substantially

similar" to model and sample forms G-10(A)-(C) in Appendix G of Regulation Z.  Regulation Z

specifically requires that the APR disclosure be in "at least 16-point type."  12 C.F.R. §

1026.60(b)(1).  This is the only applicable font size requirement found in the text of Regulation

Z.

Additionally, the Bureau has issued commentary in the form of Official Staff

Interpretations ("OSI") that offer guidance on Regulation Z's requirements.  12 C.F.R. Part 1026

Supp. I.  The OSI warrant deference and should be adhered to unless "demonstrably irrational."

*Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 211 (2011).

The OSI require that credit card application disclosures be "readily noticeable" to the

consumer.[3]  12 C.F.R. Part 1026 Supp. I, Comment 5(a).  The OSI explain that meeting the

"readily noticeable" standard requires that the "disclosures for credit card applications and

solicitations under § 1026.60 . . . must be given in a minimum of 10-point font" and then directs

readers to 12 C.F.R. § 1026.60(b)(1) for the 16-point font size requirement for purchase APRs.

*Id.* Comment 5(a)(3).  Thus, Regulation Z and the OSI establish two font size requirements for

---

[2] Section 1026.60 requires that three disclosures (as applicable) be made directly beneath the
Schumer Box.  Only two of the three are required for the VentureOne card—the introductory
APR and balance computation method.  These appear on the first two lines directly beneath the
Schumer Box on the Disclosures.

[3] Clear and conspicuous is also defined to mean "reasonably understandable."  *Id.*  Plaintiff has
not alleged that the Disclosures fail to meet this standard.

credit card application disclosures: (1) the APR must be in 16-point font, 12 C.F.R. §

1026.60(b)(1); and (2) the remaining required disclosures must be in 10-point font, 12 C.F.R.

Part 1026 Supp. I, Comment 5(a)(3).

Aside from these requirements, the OSI simply offer descriptions of the formatting

techniques used in creating the model and sample forms in Appendix G-10.  12 C.F.R. Part 1026

Supp. I, Appendix G, Comment 5.  The OSI explain as follows:

> The following formatting techniques were used in presenting the information in
> the sample tables to ensure that the information is readable:
>
> A.     A readable font style and font size (10-point Arial font style,
> except for the purchase annual percentage rate which is shown in
> 16-point type).
>
> B.     Sufficient spacing between lines of the text.
>
> C.     Adequate spacing between paragraphs when several pieces of
> information were included in the same row of the table, as
> appropriate.  For example, in the samples in the row of the tables
> with the heading "APR for Balance Transfers," the forms disclose
> two components: The applicable balance transfer rate and a cross
> reference to the balance transfer fee.  The samples show these two
> components on separate lines with adequate space between each
> component.  On the other hand, in the samples, in the disclosure of
> the late payment fee, the forms disclose two components: The late
> payment fee, and the cross reference to the penalty rate.  Because
> the disclosure of both these components is short, these components
> are disclosed on the same line in the tables.
>
> D.     Standard spacing between words and characters.  In other words,
> the text was not compressed to appear smaller than 10-point type.
>
> E.     Sufficient white space around the text of the information in each
> row, by providing sufficient margins above, below and to the sides
> of the text.
>
> F.     Sufficient contrast between the text and the background. Generally,
> black text was used on white paper.

*Id.*  Comment 5·v.

Importantly, the OSI go on to clarify that "*the Bureau is not requiring issuers to use the above formatting techniques in presenting information in the table (except for the 10-point and 16-point font requirement) . . . .*" 12 C.F.R. Part 1026 Supp. I, Comment 5·vi (emphasis added). Instead, the OSI explain that the Bureau merely "*encourages* issuers to *consider* these techniques when *deciding* how to disclose information in the table, to ensure that the information is presented in a *readable* format." *Id.* (emphases added).  Thus, the OSI are perfectly clear that the only required formatting techniques are the 10- and 16-point font specifications found in 12 C.F.R. § 1026.60(b)(1) and 12 C.F.R. Part 1026 Supp. I, Comment 5(a)(3).  Put differently, the OSI allow the issuer flexibility in formatting the Schumer Box and other required disclosures. Further, they do not prohibit issuers from choosing a font style other than Arial or from adjusting the space between words and lines of text, so long as such techniques do not render the disclosures unreadable.

2.    *Capital One's Disclosures Are Clear and Conspicuous as a Matter of Law*

Capital One's Disclosures comply with TILA's and Regulation Z's requirements.  It cannot be disputed that the statutory and regulatory framework provides flexibility in designing the Schumer Box disclosures.  In the OSI, the Bureau specifically notes that it is "not requiring" the formatting techniques on which Plaintiff bases her Complaint, i.e., the use of Arial font style and a complete prohibition on white space reduction.  12 C.F.R. Part 1026 Supp. I, Comment 5·vi.  This is in contrast to the rules governing font size, which are explicitly required.  In other words, aside from the few technical specifications concerning font size, TILA and Regulation Z's focus is on ensuring that the disclosures are "clear and conspicuous."  *Karakus v. Wells Fargo Bank, N.A.*, 941 F. Supp. 2d 318, 334 (E.D.N.Y. 2013) ("It is appropriate to observe once again that TILA's watchword is clear and conspicuous disclosure.").

Whether a disclosure is clear and conspicuous under TILA is a question of law for the Court. *Gambardella v. G. Fox & Co.*, 716 F.2d 104, 113 (2d Cir. 1983) ("Where, as here, the language and format of the periodic statement are undisputed, and the sole issue is whether required disclosures have been made clearly and conspicuously . . . , the court may appropriately decide the plaintiff's claims as raising issues of law."); *Lahoud v. Countrywide Bank FSB*, No. 3:07cv01616 DJS, 2012 WL 1067391, at *7 (D. Conn. Mar. 30, 2012) ("Conspicuousness is a question of law under TILA that, like clarity, is governed by an objective, reasonable person approach."). Whether a disclosure under TILA is substantially similar to a model form also is a question that courts treat as a matter of law. *See Schwartz v. Comenity Capital Bank*, No. 13 Civ. 4896, 2015 WL 410321, at *5-9 (S.D.N.Y. Feb. 2, 2015); *Strubel v. Comenity Capital Bank*, No. 13-cv-4462, 2015 WL 321859, at *4-7 (S.D.N.Y. Jan. 23, 2015).

The same is true in other jurisdictions. *See Rubio v. Capital One Bank*, 613 F.3d 1195, 1200 (9th Cir. 2010); *Handy v. Anchor Mortg. Corp.*, 464 F.3d 760, 764 (7th Cir. 2006) ("Whether a particular disclosure is clear for purposes of TILA is a question of law."); *Smith v. Check–N–Go of Illinois*, 200 F.3d 511 (7th Cir. 1999) (holding that "conspicuousness" must be treated as a matter of law under TILA statute); *Barrett v. Bank One, N.A.*, 511 F. Supp. 2d 836, 838 (E.D. Ky. 2007) ("Plaintiffs claim that . . . they did not receive 'clear and conspicuous' notice of their right to cancel, as required by . . . [TILA]. This is a question of law."). The parties have met and conferred on this topic and agree that the issue is one for the Court.[4]

---

[4] As a result, the parties also agree that they will not be filing separate *Daubert* or related motions *in limine* concerning the parties' expert witnesses. (Schaeffer Decl. ¶ 2.); *see 720 Lex Acquisition, LLC v. Guess? Retail Inc.*, No. 09-cv-7199, 2014 WL 4184691, at *10 (S.D.N.Y. Aug. 22, 2014) (noting that *Daubert*'s gatekeeping function is largely irrelevant in the absence of a jury). Should the Court conclude that the case must go before a jury, Capital One would seek leave to file a motion excluding the testimony of Plaintiff's expert Thomas Phinney.

As the Ninth Circuit has explained, courts determine the clear and conspicuous standard "not because judges are experts at graphic design, but because subjecting conspicuousness to fact-finding would introduce too much uncertainty into the drafting process." *In re Bassett,* 285 F.3d 882, 885 (9th Cir. 2002), *cert. denied*, 537 U.S. 1002 (2002). This objective standard considers the disclosures from the perspective of the average customer. *Karakus v. Wells Fargo Bank N.A.*, 941 F. Supp. 2d 318, 330 (E.D.N.Y. 2013) ("[Courts should] evaluate the adequacy of TILA disclosures from the vantage point of a hypothetical average consumer . . . ." (quoting *Palmer v. Champion Mortg.*, 465 F.3d 24, 28 (1st Cir. 2006)); *Aubin v. Residential Funding Co., LLC*, 565 F. Supp. 2d 392, 395 (D. Conn. 2008) ("The question courts ask is whether the average consumer would find the notice clear or confusing.").

Resolution of this case, thus, turns on the Court's consideration of Capital One's Disclosures to determine whether they meet an objective, clear and conspicuous standard—or, in the words of the OSI, are "readable." The Court may employ a straightforward, common sense approach to determine whether the Disclosures comply with this standard and advance the statute's goal of promoting plain and accurate disclosure of the cost of credit. *See Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559 (1980) (citing 15 U.S.C. § 1601). The Court can make this determination on its own review and as a matter of law. Looking at the page containing the Disclosures, there can be no question that an average customer would: (1) notice the required Disclosures, all of which appear under the bold typeface heading "Capital One Important Disclosures" in the prominent Schumer Box or the two lines directly beneath the table; and (2) be able to read them without difficulty.

There is little case law evaluating the clear and conspicuous standard in the context of font size or other formatting techniques. Instead, most cases evaluating TILA disclosures focus

on whether the language used accurately conveys the required information and does so in manner that is neither confusing nor misleading to an average consumer.  *See, e.g.*, *Altamirano v. Copiague Funding Corp.*, No. 3:06cv1751, 2008 WL 3845362, at *3-4 (D. Conn. Aug. 18, 2008).  Here, there is no issue as to whether the disclosures are understandable, but simply whether they are conspicuous in that they are noticeable and readable.

The few cases that do discuss formatting, however, illustrate examples of the types of formatting that can render a disclosure unlawful and present a stark contrast to the Disclosures at issue here.  These cases also support the proposition that a court should use an objective, common sense approach in determining whether a disclosure is readable to the general public.

In *Cole v. U.S. Capital*, the court evaluated whether an offer of credit was made clearly and conspicuously under the Fair Credit Reporting Act ("FCRA").  389 F. 3d 719 (7th Cir. 2004).  Looking to the clear and conspicuous standard employed in TILA and UCC cases for guidance, the court considered the size, placement, and other formatting techniques used to convey the disclosures.  *Id.* at 730-31.  Finding the disclosures invalid as a matter of law, the court noted that they were made in a font size no larger than six-point, were the smallest lines on the page by several sizes, and were condensed into a single paragraph at the very bottom of the flyer.  *Id.* at 731.  The court stated that "under any test of conspicuousness, the notice must fail. The type in this disclaimer fairly can be described as disproportionately small compared to the surrounding text; indeed its size approaches that which cannot be read with the naked eye."  *Id.*

Similarly, in *Murray v. Sunrise Chevrolet, Inc.*, the court evaluated an FCRA disclosure pertaining to offers of credit.  No. 04 C 7668, 2005 WL 2284245, at *3 (N.D. Ill. Sept. 15, 2005) (noting that courts often define "clear and conspicuous" by reference to case law interpreting the UCC and TILA).  As in *Cole*, the court found the disclosure unlawful, explaining that the notice

was printed at the bottom of the page, consisted of nine lines of text that took up only one inch of space, and was generally "so small as to be almost unreadable." *Id.* at *4. The court also found that it was reasonable to believe that the notice was designed to discourage the reader's attention. *Id.*

In both of these cases, the court deemed the disclosures unlawful according to an objective standard and without employing a specific set of criteria. It was enough for the court to observe that the disclosures were not prominently located or were so small to make them nearly unreadable.

The disclosures in those cases are a far cry from those at issue here. First, Capital One's Disclosures are displayed prominently at the top of the page and in the required tabular format under a boldface heading reading "Capital One Important Disclosures." Second, it is undisputed that they are 10-point and 16-point font size (as required), as opposed to 6-point size. Most importantly, *they are plainly readable under any objective standard*. The Court should hold that the disclosures comply with TILA's clear and conspicuous standard for this reason alone.

> 3. *Plaintiff Seeks To Impose Complex and Nonexistent Font Style and Size Requirements*

Based on positions taken in Plaintiff's expert report (Expert Report of Thomas Phinney ("Phinney Report"), attached as Ex. G to Schaeffer Decl.), and because it is undisputed that the disclosures were made in the required 10-and 16-point font size, Plaintiff likely will argue that the Garamond font style chosen by Capital One rendered its compliance with the 10- and 16-point requirements meaningless. In other words, Plaintiff will argue that because characters in Garamond are smaller than characters in Arial, disclosures made in the Garamond style must be made in a larger point size than what is required in Regulation Z and the OSI. Alternatively, Plaintiff may argue that, while Arial is not required, the creditor must pick a font that is at least

as large as Arial.  The Court should not accept Plaintiff's attempt to impose obligations that do not exist in the law.

Capital One does not dispute that 10-point Garamond is slightly smaller than 10-point Arial, or that it decreased the space between lines and characters to fit all of its disclosures on a single page.  As explained above, however, nothing in TILA, Regulation Z, or the OSI prohibits this, and Capital One's chosen techniques have not rendered the disclosures illegible or inconspicuous.  Plaintiff's expert spills considerable ink debating the fine points of Arial versus Garamond, discussing such details as x-height, cap-height, stroke thickness, etc., to show that Garamond is marginally smaller than Arial, but the simple fact is that the law does not impose a font style requirement.  Capital One's disclosures satisfy Regulation Z's explicit requirements, and are plainly legible and readily noticeable.  Nothing more is required.  Moreover, it is implausible to suggest that by encouraging creditors to "consider" using Arial, the Bureau was in fact imposing an implied font style and size combination requirement.

Capital One acknowledges, of course, that certain font styles would be poor choices and would render the Disclosures unreadable or nearly unreadable.  To take one of many possible examples, printing the disclosures in 10-point Vladimir Script arguably would not comply.  (See the following example: "*We will begin charging interest on cash advances and transfers on the transaction date.*")  And certainly there are fonts that are styled in such a way that Regulation Z's point-size requirement would be rendered all but meaningless.  (*See* Phinney Report at 16.)  The key point, however, is that Capital One's Disclosures in Garamond at 10- and 16-point size are plainly readable. Garamond is not an unusual or difficult to read font style, and the disclosures are readable at the required sizes.

Regarding the compression of text, the formatting guidelines in the OSI simply "encourage" lenders to "consider" not compressing text or reducing space such that the disclosure is not readable.  Again, if the Bureau wanted to prohibit compression outright, it would have.  Instead, however, the Bureau specifically stated that but for the 10- and 16-point font size requirements, none of the model form's formatting techniques are required.  Plaintiff's attempts to impose additional requirements, therefore, are misplaced, and the Court should focus its inquiry on the purely legal question of whether the disclosures comply with the undisputed text of the law and the OSI guidance that focuses on the "readable" standard.

4.      *Capital One's Disclosures Are Substantially Similar to the Model Form*

Plaintiff cannot credibly assert that the Disclosures vary significantly from the model and sample model forms in Appendix G.  TILA does not require perfect compliance with the model forms.  *See* 15 U.S.C. § 1604(b) ("Nothing in this subchapter may be construed to require a creditor or lessor to use any such model form or clause prescribed by the Bureau under this section.").  Instead, the "model form provides a safe harbor from liability for the creditors, making it easier to comply with the statute."  *Schwartz*, 2015 WL 410321, at *6 (citing 15 U.S.C. § 1604(b)).  All that is required is substantial similarity.  12 C.F.R. § 1026.60.

Two recent decisions from this court help illustrate that minor deviations from the model forms are not actionable.  In *Schwartz*, the plaintiff, represented by the same counsel as the plaintiff in this case, alleged that a billing rights notice required by 15 U.S.C. §1637(a)(7) differed in four respects from the model form found in Regulation Z.  2015 WL 410321, at *2. The court found that three of the four alleged variances from the model form were insignificant and did not amount to violations.  *Id.* at * 6-9.  As to each, the court noted that the OSI specifically made the notices at issue optional.  *Id.*  The court also explained that creditors do not

need to perfectly replicate the model forms when the result has no impact on whether the required disclosures are adequately conveyed.  *Id.*  In contrast, the one item that the court found actionable consisted of a substantive omission, the result of which was to mislead consumers about a required notice.  *Id.* at *7-8.

In a case nearly identical to *Schwartz,* Abigail Strubel, the same plaintiff as in this case (again represented by the same counsel), asserted claims for the same minor variances from the billing rights notice model form.  *See Strubel*, 2015 WL 321859, at *3-7.  The court rejected Plaintiff's claims for substantially the same reasons expressed by the court in *Schwartz*, but also dismissed her fourth claim, finding all the deviations insignificant and non-actionable.[5]

The OSI at issue in this case are similar to those in *Schwartz* and *Strubel*.  They note that the precise formatting techniques used in the model and sample forms in Appendix G are not required.  These are explicit statements in the OSI that warrant deference.  The Court should not require creditors to adhere to techniques the Bureau has itself specified are not mandatory. Moreover, the difference in font style is a minor deviation from the model form and does not have any meaningful impact on readability.  Plaintiff does not allege that Capital One made a substantive omission, just that it used different formatting techniques to display the required disclosures.

### B.    At Best, Plaintiff Asserts Only Hypertechnical Violations

Even if the Court were to decide that the Disclosures are not perfectly compliant with TILA and Regulation Z's requirements, Plaintiffs would still be left with only "hypertechnical" violations of the kind frequently rejected by the Second Circuit.  Because the Disclosures comply with the heart of TILA's requirements—that they be readable and readily noticeable—there can

---

[5] Ms. Strubel and her counsel were also involved in a third TILA disclosures class action in this district within the past two years, alleging similar claims regarding a billing rights notice.  *See Strubel v. Talbots Classics et al.*, No. 1:13-cv-01106-PAE (S.D.N.Y.)

be no meaningful violation.

"TILA . . . does not require perfect disclosure, but only disclosure which clearly reveals to consumers the cost of credit."  *Gambardella*, 716 F.2d at 118 (dismissing a TILA claim as too technical where the statements "read as a whole" disclosed the required interest rates); *see also Turner v. General Motors Acceptance Corp.*, 180 F.3d 451, 457 (2d Cir. 1999) (TILA requires "meaningful disclosure," not "more disclosure" and civil liability should be limited to "significant violations"); *Strubel*, 2015 WL 321859, at *3-7 (finding minor variations from the model form insufficient to support claim under TILA); *Schwartz v. HSBC Bank USA, N.A.*, No. 13 Civ. 769, 2013 WL 5677059, at *8 (S.D.N.Y. Oct. 18, 2013) ("District courts in this circuit have largely also dismissed purely technical claims.") (collecting cases); *Stein v. JPMorgan Chase Bank*, 279 F. Supp. 2d 286, 292-93 (S.D.NY. 2003) (finding non-actionable a claim for failure to specify that the interest rate is determined as of the date of the credit application where the interest rate was clearly set out).

Other circuits agree with the Second Circuit's rule.  *See In re DiVittorio,* 670 F.3d 273, 295 (1st Cir. 2012) (noting that "hypertechnicality" is not the rule in the First Circuit and asking instead "whether any reasonable person, in reading the form provided in [the] case, would so understand it"); *Watkins v. SunTrust Mort., Inc.*, 663 F.3d 232, 239 (4th Cir. 2011) ("TILA's regulations should be 'reasonably construed and equitably applied.'"); *Veale v. Citibank*, 85 F.3d 577, 581 (11th Cir. 1996) ("TILA does not require perfect notice; rather it requires a clear and conspicuous notice of rescission rights."); *Smith v. Chapman*, 614 F.2d 968, 972 (5th Cir. 1980) ("Strict compliance does not necessarily mean punctilious compliance if, with minor deviations from the language described in the Act, there is still a substantial, clear disclosure of the fact or information demanded by the applicable statute or regulation.").

Even if the Court accepts Plaintiff's theory that the OSI impose additional obligations beyond its text, or that Capital One's disclosures somehow violated the written requirements, all Plaintiff could offer is a minor violation.  To repeat, the Disclosures appear prominently in the Schumer Box or directly beneath it, and are easily readable to the naked eye.  Indeed, it is implausible that a consumer who sees a page of disclosures set off in a box and listed under the heading "Capital One Important Disclosures" (*see* Ex. A), would ignore or not be able to read the material simply because it was not in his or her preferred font style.  Again, Plaintiff cannot assert that Capital One omitted any substantive information from the Disclosures, nor can she claim that consumers were misled about any of the card's terms.  Instead, all Plaintiff can even arguably claim is that the Disclosures were not provided in the suggested format.  As Capital One has repeatedly noted, the OSI upon which Plaintiff relies simply offer suggestions about what formatting techniques to use and require only that the disclosures meet the "readable" standard, not some "perfect disclosure" standard.  *See Gambardella*, 716 F.2d at 118.

### C.   Capital One's Expert Report Establishes That its Disclosures Are as Readable as Plaintiff's Suggested Requirements

Plaintiff has submitted an expert report that purports to opine on the legibility of Capital One's Disclosures.  Plaintiff's expert spends considerable time discussing the history and technical details of the Garamond and Arial font style families (as well as others).  But for all of the time spent on typographic minutiae, the thrust of Mr. Phinney's report is easy to summarize: because Arial is larger than Garamond at the same point size, choosing Arial for the Disclosures would have produced a *more* legible document.  (Phinney Report at 1 ("[T]he deviation from the regulatory requirements produced a significantly less legible document.")).[6]  Neither Regulation

---

[6] Mr. Phinney's report incorrectly states that Arial is "mandated" by Regulation Z.  (*Id.* at 1.)  At his deposition, however, he conceded that he has no opinion about Regulation Z's requirements.

Z nor the OSI, however, impose a "most legible" requirement.  They explicitly leave the choice of font style and other formatting techniques to the creditor and require only that the disclosures be readable.  Because the entire Phinney Report is based on the flawed assumption that creditors must use the best possible font style, the Court has cause to disregard the entire report.

Even if one were to assume, however, the validity of comparing Arial and Garamond, or to accept that the latter becomes unreadable at a larger point size than the former, Plaintiff still has not—and cannot under an objective standard—demonstrate that 10- and 16-point Garamond is not clear and conspicuous.  The Court can discern for itself that the Disclosures are easily readable to an average consumer.  And in fact, the report of Capital One's expert witness, Dr. Aries Arditi, confirms that Capital One's Disclosures are just as readable as the 10- and 16-point Arial font size and style that Plaintiff suggests is required.  (*See generally* Expert Report of Dr. Aries Arditi ("Arditi Report"), attached as Ex. C to Schaeffer Decl.)

Dr. Arditi,  a vision scientist with significant research and field experience on the topic of isolating the impact of individual font features on legibility (*see* Arditi Report, at 1), conducted a study in which he tested the relative readability of text printed in Garamond.  Using reading speed and error rate, two common and well-accepted measures of legibility, his experiment compared Garamond with two widely-available fonts, Arial and Times New Roman.  (*Id.* at 2, 8.)  The Garamond text was set according to virtually the same spacing specifications used in the Disclosures.[7]  (*Id.* at 8.)  The Arial and Times New Roman employed default spacing that is larger.  (*Id.* at 8.)  All three examples were set in 10-point font size.  (*Id.* at 8.)

---

(*See* Deposition of Thomas Phinney ("Phinney Dep.") at 38:2-12, attached as Ex. F to Schaeffer Decl.)

[7] The leading in the Capital One Disclosures was not uniform.  To account for this, Dr. Arditi duplicated the most extreme leading found in the Disclosures and used it throughout the Garamond sample.  (*Id.* at 8.)

The results of the experiment established no significant variation in either reading speed or error rate across the three samples.  (*Id.* at 11)  The highest reading speeds were obtained in nearly equal numbers among the three fonts.  (*Id.*)  Of particular importance was how little the data varied for each participant across the three type settings, with "no apparent systematic variation or 'winner' across font/conditions."  (*Id.*)  Dr. Arditi concluded that there was no evidence that Capital One's decision to use Garamond, negative tracking, and reduced line spacing "had any impact whatsoever on readability of the text."  (*Id.* at 12.)

In addition to the study, Dr. Arditi also evaluated the Disclosures according to standards accepted in the scientific community for measuring legibility.  (*Id.* at 4-6.)  Specifically, Dr. Arditi evaluated 10-point Garamond's "critical print size," which measures the minimum printed size necessary for fluent legibility.  (*Id.*)  Dr. Arditi's analysis showed that the Disclosures fit within that criterion's range for fluent reading.  (*Id.* at 5-6.)  He concluded that the formatting techniques employed in the Disclosures resulted in text that is easily readable by a person with normal near vision.  (*Id.* at 1.)

 Finally, during Dr. Arditi's deposition, he elaborated on the minimum point size necessary to ensure fluent reading with Garamond.  By using actual-size measurements of characters printed in Garamond, Dr. Arditi calculated that text as small as 8.7-point may be used before any decrease in reading fluency might occur.  (Deposition of Dr. Aries Arditi at 122:5-124:19, 162:21-163:11, attached as Ex. E to Schaeffer Decl.)  This offers further confirmation that Capital One's Disclosures—printed in 10- and 16-point font size—do not pose any difficulty with legibility or reading fluency.

In sum, even accepting Plaintiff's misunderstanding of TILA's requirements, Capital One's Disclosures are not in fact "less readable" than what Plaintiff suggests is the required Arial

font style.  To be clear, however, it is not necessary to consider Dr. Arditi's report to resolve this case.  The Court should conclude that the Disclosures are readable to an average consumer based on its own evaluation of the document.  Dr. Arditi's study simply confirms with scientific evidence what is plain to the naked eye: the Disclosures are easily noticeable and readable to the average person, and therefore meet the clear and conspicuous standard.

> **D.    A Stay is Warranted Until the Supreme Court Decides Whether Plaintiffs Who Assert Only Statutory Damages Possess Article III Standing**

On April 27, 2015, the Supreme Court agreed to resolve a long-standing and important question concerning the ability of litigants who have suffered no harm to assert claims for statutory violations.  The question presented in *Spokeo v. Robins* is:

> Whether Congress may confer Article III standing upon a plaintiff who suffers no concrete harm, and who therefore could not otherwise invoke the jurisdiction of a federal court, by authorizing a private right of action based on a bare violation of a federal statute.

Pet. for Cert. at i, *Spokeo v. Robins*, No. 13-1339 (U.S. Apr. 27, 2015), 2014 WL 1802228. Stated plainly, the Court agreed to decide whether a plaintiff who claims only a statutory violation has Constitutional standing to sue.  This fundamental issue has never been affirmatively resolved, and this Court should wait for guidance from the Supreme Court before deciding whether Plaintiff has standing to assert her claim.

In *Spokeo*, the plaintiff alleged the defendant violated the FCRA by providing inaccurate Internet search results about him and failing to make required disclosures concerning the search results.  *See* 742 F.3d 409, 410-411 (9th Cir. 2014).  The district court dismissed the case for lack of standing, finding that the Plaintiff had failed to adequately allege any actual harm.  *Id.*  The Ninth Circuit reversed, holding that the "creation of a private cause of action to enforce a statutory provision implies that Congress intended the enforceable provision to create a statutory

right," and that "the alleged violations of [the plaintiff's] statutory rights are sufficient to satisfy

the injury-in-fact requirement of Article III." *Id.* at 413-14.

This holding arguably conflicts with opinions from a number of circuits—including the

Second Circuit—which have declined to conflate statutory and Article III standing.[8]  These cases

hold that a plaintiff pursuing a statutory cause of action must also demonstrate a concrete injury-

in-fact to establish Article III standing.  In the context of an ERISA case, the Second Circuit has

stated that a plan beneficiary must allege more than a "breach of fiduciary duty to comply with

ERISA, or a deprivation of [the plaintiff's] entitlement to that fiduciary duty" to "constitute[] an

injury-in-fact sufficient for constitutional standing." *Kendall v. Employees Retirement Plan of

Avon Prods.*, 561 F.3d 112, 121 (2d Cir. 2009).  Similarly, the Fourth Circuit has rejected the

argument that "deprivation of [a] statutory right is sufficient to constitute an injury-in-fact for

Article III standing" as "a non-starter as it conflates statutory standing with constitutional

standing." *David v. Alphin*, 704 F.3d 327, 338-39 (4th Cir. 2013); *see also Doe v. Nat'l Bd. Of

Med. Exam'rs*, 199 F.3d 146, 153 (3d Cir. 1999) (Becker, C.J., joined by Scirica and Alito, JJ.)

("Congress cannot confer standing by statute alone.").

The Supreme Court has agreed to definitively resolve this question, and its answer may

be dispositive to the case at hand.  Plaintiff acknowledges that she suffered no actual harm and is

seeking relief only as to the alleged violation of her statutory rights.  (Compl. ¶ 40.)  When asked

the source of her alleged injury, Plaintiff responded that "the act of being provided with

noncompliant application materials gives rise to a legally cognizable actual injury under TILA

---

[8] The Supreme Court itself has issued conflicting statements on the question. *Compare Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) ("Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing."); *with Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("The actual or threatened injury required by Article III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.") (internal quotation marks omitted).

and a right to statutory damages." (Plaintiff's Responses to Capital One's Discovery Requests, at 3, attached as Ex. H to Schaeffer Decl.) This is the sole source of Plaintiff's alleged harm.

This Court must assure itself of standing at every stage in the proceedings, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 340 (2006), and its standing decision will rise or fall depending on how the Supreme Court resolves the question presented in *Spokeo*. Should the Supreme Court side with the petitioner, this case will have to be dismissed for lack of standing. Accordingly, this Court should stay a decision in this case pending a ruling in *Spokeo*.

## VI.    CONCLUSION

For the foregoing reasons, Capital One submits that its Disclosures comply with all of TILA's requirements. The Court may undertake a simple, common sense approach to determine whether the Disclosures are noticeable and readable to an average consumer. The results of this simple approach have been confirmed through scientific research. Plaintiff should not succeed in creating new requirements where the law specifically rejects them, all in an effort to impose significant liability for what could most favorably be deemed a hypertechnical violation. Capital One asks that the Court grant its Motion for Summary Judgment.

Dated: May 18, 2015                                CAPITAL ONE BANK (USA), N.A.


                                                   /s/  *Seth A. Schaeffer*
                                                   Bryan A. Fratkin (admitted pro hac vice)
                                                   Seth A. Schaeffer (SS3469)
                                                   McGuireWoods LLP
                                                   901 East Cary Street
                                                   Richmond, Virginia 23219
                                                   Phone: (804) 775-1000
                                                   Fax: (804) 775-1061
                                                   bfratkin@mcguirewoods.com
                                                   sschaeffer@mcguirewoods.com

                                                   Jeffrey J. Chapman (JC1813)
                                                   McGuireWoods LLP

21

1345 Avenue of the Americas, 7th Floor
New York, New York 10105
Telephone: (212) 548-7060
Fax: (212) 715-6277
jchapman@mcguirewoods.com

*Counsel for Capital One Bank (USA), N.A.*

## CERTIFICATE OF SERVICE

I, Seth A. Schaeffer, certify that a true and correct copy of the foregoing has been served upon the following via ECF and such document is available for viewing and downloading on the ECF system:

Brian L. Bromberg
Jonathan Robert Miller
Bromberg Law Office, P.C.
26 Broadway, 21st Floor
New York, NY 10004
(212) 248-7906
brian@bromberglawoffice.com
jonathan@bromberglawoffice.com

Harley J. Schnall
Law Office of Harley J. Schnall
711 West End Ave.
New York, NY 10025
(212) 678-6546
schnall_law@hotmail.com

*Counsel for Plaintiff*

/s/  *Seth A. Schaeffer*
Seth A. Schaeffer (SS3469)
McGuireWoods LLP
901 East Cary Street
Richmond, Virginia 23219
Phone: (804) 775-1000
Fax: (804) 775-1061
sschaeffer@mcguirewoods.com